that it is more probable than not that McIntyre is in the course of his employment when all of this happens. So you're saying, if I can simplify it, that McIntyre is on a mixed-purpose encounter? No, sir. I am not saying that. I am saying it in the alternative. I am saying the evidence is that he was not, that he was there wondering. When the arbitrator said, found the claimant not credible, does that mean anything? Oh, absolutely, Your Honor. It means he thought he was either lying or misstating. The problem with that is, in our position that we most respectfully submit, is that this wasn't done properly. And you can make anybody look bad if you don't follow the rules, and they didn't. And you did. Yes, sir. Thank you. Thank you. Counsel, please. Please proceed. Your time is passing. Thank you, Judge. I was deferring to the justices. Oh, I can do two things at once. May it please the Court. It's a multitask on a regular basis. He's known for that. May it please the Court of Counsel. My name is Rick Kimnock. I'm here on behalf of the Respondent Allegiance Telecom. I can be relatively brief. Excuse me. Well, I have a question. Opposing counsel starts his argument by saying that counsel for the Respondent apparently didn't file an appearance and that there couldn't be a proceeding had because of that. Yes, he said that. I was not trial counsel. I have no explanation for the delay in the appearance. Are you telling me that a claimant, an injured worker, retains an attorney to file a claim to seek benefits and can't get anything because Respondent just refused to show up? I am not saying that. And I think there are procedural avenues he could have explored that he did not. We have no record of what actually transpired. We know that he filed requests for hearings, perhaps 19Bs. We don't have any record of what transpired once those were presented, whether he got a hearing date and he appeared at the hearing date and he was thrown out or whether he, you know, I presume he appeared, but if he did not appear, we have no record of that. There's just nothing to judge why the arbitrator, as he represents time after time, would not allow a hearing. And if that was going on, if I were the petitioner's attorney, I certainly would have taken it beyond the arbitrator, the commissioner, or the chairman's office. But we don't know what happened. In any event, the Workers' Compensation Act, nothing in the Workers' Compensation Act, nothing in the rules of the Illinois Industrial Commission, Workers' Compensation Commission, and no precedent from this court or the Supreme Court has established any kind of mechanism for a default judgment, which is essentially what counsel is asking for. So in the Contreras case, it's not authority. There's no statutory authority. There's no rules authority. There's no precedential authority. That just can't be considered by this court. Don't you think that's sad, though? I think that's something that either the commission or the legislature ought to look at. I believe 19b1 would be an avenue of relief, and the arbitrator would have little or no discretion in allowing a hearing under those circumstances. But I'm dealing with the case at hand, not with the hypothetical case. No, I wanted your response to that. Thank you. With regard to the redacted police report, that report can be treated as impeachment. It can also be treated as substantive evidence, as an admission by the petitioner. Now, as was pointed out by this panel, there was no objection to that redacted report. Once the report was admitted as evidence, there was no motion to strike any of the questioning of the petitioner under cross-examination. There was no presentation of rebuttal evidence. So if there was any impropriety with regard to the submission of that document, it was certainly waived by the petitioner. And that document, as was pointed out, provides an alternative perspective on what happened on the day of the accident to explain this assault. And that explanation is purely personal to the petitioner. If he had demonstrated that the assault was about a company-related debt, then he'd have an argument that the police report was somewhat equivocal, ambiguous, excuse me, could have been interpreted a different way. But his testimony, and to the extent that it was at all corroborative, of his other customer was that he wasn't going there to collect a debt. He was merely going there to show, in black and white, a credit. Who was the other customer you're referring to? That was Khalil Muhammad, or I can't remember, Khalid Muhammad. And Mr. Muhammad, there were certain discrepancies in his testimony and the petitioner's, but the fundamental issue is that Mr. Muhammad went in there, but he really didn't hear what was going back and forth between the petitioner and Anthony Davis. So as far as the actual content of the conversation is purely the petitioner's testimony isolated. Nobody disputes that he got hit on the day of the accident. The question is the motivation for the hitting. And the petitioner categorically denied that he was there to collect any kind of money from the assailant. So not only does he rule out a personal motive by his self-serving testimony, he also rules out a work-related motive for the assault. So he basically contradicts his own revelation to the police department in the more or less contemporaneous. He rules out a work-related purpose? How did he do that? If one assumes, as he can only assume, or at least the commission found, and we have to give them deference, that the motivation for the attack was to collect the debt. Well, that was their finding, but wasn't there also testimony that he was there to show the credit? Okay, that puts him at the place. You know, I'm not saying he was not in the course of his employment at the time of this accident. The question is whether the assault arose out of the employment. And if the motivation for the assault had nothing to do with the business, then it did not arise out of the employment. So you're actually conceding he was in the course of the employment? I'm assuming arguendo he was in the course of the employment and saying, so what? The assault has to relate to the employment. I mean, we've had assaults before where the individuals were both on the job. What did the commission find? Did they find he was in the course of it? I don't recall whether they actually split the issue apart into arising out of and in the course of. I suspect that they just said it didn't arise out and were in the course of it. Counsel, let me just, I think you're heading down sort of a dangerous path because I'm thinking through what you just acknowledged. If somebody goes in the course of their business to collect, let's just say they're working for a cable company, they're going to install a cable, they happen to go to the house of somebody who's an enemy and the person jumps on them, are you saying they're not in the course of employment because the attack was motivated by something that had nothing to do with the reason the cable guy went there? That would be an unexplained, a totally unexplained happenstance assault. I'm saying we have a valid explanation. It has nothing to do with the guy's work. So you're not conceding that he went there for official business, are you? I'm saying that inference could be drawn and I'm saying what we have here is even if he did that, that just puts him at the place that does not give rise to any of the risk of the assault. The commission found that it neither arose out of nor in the course of it. Specifically found it. Okay. I wouldn't be conceding in the course of it unless you want to steal defeat from the jaws of victory. I say and I don't think that the doctrine of in the course of is so broad that once you're in the course of whatever happens to you arises out of the employment. It is a simple case where this police report got admitted in to evidence and the police report says purpose for the visit, inferentially purpose for the assault was the client customer owed money personally to the... And he didn't associate it with his work or anything because it wasn't a collection call. Where did this history of referral fees come into evidence? I believe they were building inference on inference because the petitioner had said that he had turned Davis on to this job to wire a florist so the florist could get allegiances business and therefore the inference was that the petitioner was expecting a little bit of a comeback on that and therefore that's where they derive, you know, maybe that's where he was looking for money. Is facilitating the installation of your employer's system in the course of... In the course of the employment? Yeah. Oh, I would not argue that. I mean, I would not argue against that. I would say... Is that kind of what we have here? We don't know what the debt was and the petitioner said it had nothing to do with his business. So with that, what else do you got? You got personal. And as far as calling any other witnesses, who are we going to call? Are we going to call Anthony Davis? We had no relationship with Anthony Davis. We put him on the witness stand. By the way, he's equally available to the petitioner. There's a potential he could plead the Fifth Amendment and what is he going to say? I have no idea, but you can't draw an inference against us for failing to call a totally unrelated witness. Any of the other quote-unquote employees of the respondent weren't there. They would have no personal knowledge of what transpired. And by the way, the business sold out three, four years before trial. Commission's decision should be affirmed. Thank you. Thank you, Your Honors. There are several points that I would like to address, but may I start with the council's first point, and that is the over three-year delay in filing an appearance. Your Honors, this happens in the real world out there of practicing law. This happens, fortunately, not very often. Is this because there's no provision for default? Probably. Probably. In all fairness, if you want my particular point of view on this, it was also at a time when workers' compensation was being administered in the context of the administration bragging about how many claims were not being filed. And so, you know, we practitioners used to walk over to the Industrial Commission, especially petitioners, and say, well, we're going to get our daily continuance. Couldn't get to trial. Couldn't get anything done. And, of course, no cases were being settled because everybody knew that they could just absolutely do nothing and get away with it. I ran a defense division for 12 years. One of the best ways to defend a case is the accident happens on Monday. Tell the boss just not to make a report. What's that have to do with this case? The manner in which this thing did not come to trial, Your Honor. So I think the court, I don't think that there's anything out there. Our counsel suggests the legislature should act. I think the supervising courts need to take a look at this just as they did in Contreras. Different issue, but kind of the same problem. Let me cut to the chase on this case. It seems to me that it's within the province of the commission to weigh the credibility of the witnesses and the weight to be given to the evidence, correct? Yes, sir. So what is there in the evidence that doesn't support the commission's finding? Well, first of all, Davis, McIntyre is testifying, testifying under oath. It's the only sworn testimony we have in this. Counsel asked who should they call. He testified to all of this. He testified to the culture at Allegiance, how networking works. That's why Khalid is there.  Now, the evidence is that McIntyre got expert florists as a customer for Allegiance, but expert florists didn't have the wiring. Anthony Davis was an installer. Davis networked Davis with expert flooring, and Allegiance gets an account out of this. Now, if we get a remand and we retry the case, I represent to this court there will be testimony on behalf of McIntyre's supervisors that even if McIntyre got a referral fee for that, they don't care because they got the business from expert flooring. So why doesn't this? That's not right. So why doesn't, in order to rebut this, why doesn't the respondent call Anthony Davis? Because he's not obligated to. No, that's right. But he's their customer. You know, he's not going to do us any favors since he socked the guy. Why don't they call Steve Martin, the co-worker? They're not obligated to, Your Honor, but how do you rebut sworn testimony? Why don't they call Jay Haas, who is McIntyre's boss? We have submitted his affidavit with a motion that you have denied. If the court would be so kind as to reconsider that, I think you will start to see that there is ‑‑ I don't think we'll take evidence here. All right, well, in any event, there is, in my view, an overwhelming amount of very credible evidence that is not rebutted, not responded to, and is handled by this respondent in the same kind of way that they handled not filing an appearance, just by we're not going to bother with this, and they hope that, you know, the triers of fact, including this court, buy into their point of view. And so far they have. I don't think this is due injustice. I don't think this is what this record says. I think this petitioner deserves to have this matter reversed. Thank you, Your Honor. The court will take the matter under advisement for disposition.